ROSIN CARSENDINO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carsendino v. Commissioner
Docket No. 15005-91
United States Tax Court
T.C. Memo 1994-79; 1994 Tax Ct. Memo LEXIS 80; 67 T.C.M. (CCH) 2248; February 24, 1994, Filed *80 Decision will be entered for respondent. P and her husband, H, filed joint returns over a 4-year period. R determined deficiencies and additions to tax against P and H based upon the omission of items from gross income during each year in that period. H was convicted of attempting to evade taxes based upon those omissions. The normal 3-year statute of limitations having run, R contends that assessment and collection of the deficiencies are not time barred since H, who was responsible for preparing the returns, filed fraudulent returns with intent to avoid tax. P contends that even if assessment and collection are not time barred, she should be relieved from liability under the "innocent spouse rules." 1. Held: The assessment and collection of deficiencies are not barred by the statute of limitations since R has established, by clear and convincing evidence, that H intentionally sought to avoid the payment of taxes known to be owing. Proof of fraud in a joint return will permit assessment and collection against either spouse at any time. Sec. 6501(c), I.R.C.
2. Held, further, P is not relieved from liability under the "innocent spouse rules" since she has failed *81 to show that a reasonably prudent taxpayer, with P's knowledge of the family finances, would have no reason to know of the omissions from income. Sec. 6013(e)(1)(C), I.R.C.
3. Held, further, P is liable for the additions to tax for substantial understatement of tax that were determined by R. Sec. 6661, I.R.C.
For petitioner, Irving A. Garson. For respondent, Curt M. Rubin, Melanie M. Garger, and Roland Barral. HALPERN
HALPERN
MEMORANDUM FINDINGS OF FACT AND OPINION HALPERN, Judge: By notice of deficiency dated April 13, 1991, respondent determined against petitioner and her husband (1) deficiencies in Federal income tax and (2) additions to tax as follows: Additions to Tax Year
Deficiency
Sec. 6661
Sec. 6653(b)
1983
$ 24,689
$ 6,172
$ 12,345
1984
13,169
3,299
6,598
1985
20,678
5,170
10,339
1986
14,221
3,555
10,666
Taking into account concessions made by the parties, the issues remaining for decision are: (1) Whether the statute of limitations bars assessment and collection of unpaid taxes for any or all of the tax years in issue, (2) whether petitioner is relieved of her liability for any or all of the amounts in issue as a so-called *82 innocent spouse, and (3) whether petitioner is liable for additions to tax for substantially understating her income tax liability. Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts filed by the parties and attached exhibits are incorporated herein by this reference. At the time the petition in this case was filed, petitioner resided in New City, New York. Petitioner and her husband, Angelo Carsendino (Angelo), were married in 1960. They continued to be married at the time of the trial in this case. Petitioner and Angelo are calendar year taxpayers. Each of them signed, and they timely filed, joint income tax returns for 1983, 1984, 1985, and 1986. Respondent's statutory notice of deficiency herein is dated April 13, 1991. It shows reported and unreported income as follows: Gross
Amount Not
Year
Income Reported
Reported
1983
$ 27,154
$ 98,742
1984
45,261
35,760
1985
51,531
51,984
1986
66,352
33,657
On June 25, *83 1990, Angelo was convicted under section 7201 of income tax evasion. He was convicted of one count for each of 1983, 1984, 1985, and 1986. Angelo's convictions were based upon his indictment for willful and knowing omission of items from reported income and, therefore, fraudulent filing of wrongful joint income tax returns. Angelo owned Best Vue Service Corp. (Best Vue), a television repair company. Angelo was an employee of Best Vue, and Best Vue paid him a salary and bonuses. Petitioner and Angelo maintained 11 joint bank accounts during the years in issue. The following table lists those accounts and shows (1) total deposits (by either petitioner or Angelo) and (2) withdrawals by petitioner. Account
Account
Amounts Withdrawn
Bank [1]
Type
Number
Deposits
By Petitioner
Joint Account Activity in 1983
NNB
Checking
437-3621264
$ 103,891
$ 81,897
NNB
Savings
437-0116178
1,117
NNB
Christmas Club
437-2802073
400
Totals
105,408
81,897
Joint Account Activity in 1984
NNB
Checking
437-3621264
$ 74,518
$ 49,373
NNB
Savings
437-0116178
21,542
NNB
Christmas Club
437-2802073
2,500
NNB
Cert. Deposit
434-6701906
10,000
NNB
Cert. Deposit
434-6701892
10,000
GB
Checking
4/63-161267
6,268
5,402
Totals
[2] 114,828
54,775
Joint Account Activity in 1985
NNB
Checking
437-3621264
$  76,383
$ 75,960
NNB
Christmas Club
437-2802073
250
NNB
Checking
434-3682609
6,200
4,006
NNB
Christmas Club
434-8203458
300
NNB
Savings
434-0150592
1,106
ML
Cash Management
804-25925
26,964
Totals
111,203
79,966
Joint Account Activity in 1986
NNB
Checking
437-3621264
$ 42,717
$ 39,896
NNB
Checking
434-3682609
20,400
15,732
NNB
Christmas Club
434-8203458
2,550
NNB
Savings
434-8201544
250
ML
Cash Management
804-25925
3,151
Totals
69,068
55,628
*84 Angelo also maintained individual bank accounts. One of those accounts was a checking account at Chemical Bank, account number 133-222004 (the Chemical account). In October 1985, petitioner was the payee on a check drawn from that account by Angelo in the amount of $ 500. Additionally, in February 1986, petitioner wrote and signed (using her own name) five checks on the Chemical account at the request of Angelo, although she did not have signature authority with regard to that account. In October 1983, petitioner and Angelo sold their then residence for $ 113,000. They used some of the proceeds received from the sale to purchase another residence, at 4 Jade Court, Pomona, New York. The 4 Jade Court residence was purchased for $ 189,000. A portion of the purchase price was paid in cash. In connection with that purchase, petitioner drew checks in amounts totaling $ 42,847 on one of the joint accounts that she maintained with Angelo. In August 1983, Angelo purchased a new Cadillac automobile (the 1983 Cadillac). He paid $ 18,000 in cash for that automobile and received a credit of $ 500 on the trade-in of a used car. The 1983 Cadillac was intended by Angelo to be a gift to *85 petitioner, and it was used by her. In December 1984, Angelo traded in the 1983 Cadillac towards the purchase of two new Cadillacs (the 1984 Cadillacs), worth approximately $ 55,000 (together). Angelo paid at least $ 5,299 in cash for the 1984 Cadillacs. Petitioner was given one of the 1984 Cadillacs to drive. In February 1986, petitioner and Angelo were the sole shareholders of Jade Corp. At that time, Jade Corp. purchased real estate for $ 125,000. That amount was paid with a check drawn on the Chemical account. Petitioner was present at the closing. At the closing, petitioner wrote and signed five other checks on the Chemical account. Those checks were used in connection with the closing. ULTIMATE FINDING OF FACT In signing each of the returns here in question, petitioner knew, or had reason to know, that there was a substantial understatement of tax on each return attributable to grossly erroneous items of her husband. OPINION In her notice of deficiency, respondent asserts that petitioner is liable for deficiencies in tax for the tax years 1983, 1984, 1985, and 1986, additions to tax for substantial understatement of tax pursuant to section 6661, and additions to *86 tax for fraud pursuant to section 6653(b). Respondent has conceded that petitioner is not liable for the fraud penalty. Aside from her reliance on the statute of limitations and innocent spouse relief, petitioner has conceded that respondent's deficiency determinations are correct. As stated, the issues remaining for consideration are: (1) Whether the statute of limitations bars the assessment and collection of income tax for the taxable years at issue, (2) whether petitioner qualifies for innocent spouse relief pursuant to section 6013(e) for the years at issue, and (3) whether petitioner is liable for additions to tax for the substantial understatement of tax pursuant to section 6661 for the years at issue. I. Statute of Limitations
Petitioner was a signatory to timely filed joint returns for each year here in question. Moreover, respondent's notice of deficiency was issued more than 3 years after the last of those returns was filed. In the petition, petitioner has raised as a defense the statute of limitations, for all of the years in issue. Section 6501(a) provides, generally, that any tax must be assessed within 3 years of the date on which the tax return *87 was filed. There are exceptions, however. In the answer, respondent has asserted two exceptions. The first exception applies when there is a false or fraudulent return filed, and the second applies when there has been a substantial omission of items on the return. Sec. 6501(c)(1), (e)(1)(A). Unless one of those exceptions applies, petitioner has an adequate (and complete) defense to each of the deficiencies and the related additions to tax determined by respondent. We thus must determine whether either of those exceptions applies. In relevant part, the first exception states: "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed * * * at any time." Sec. 6501(c)(1). In cases involving joint returns, fraud on the part of either spouse will permit collection "at any time" against both spouses. Ballard v. Commissioner, 740 F.2d 659, 662-663 (8th Cir. 1984), affg. in part and revg. in part T.C. Memo. 1982-466; Vannaman v. Commissioner, 54 T.C. 1011, 1018 (1970); Allen v. Commissioner, T.C. Memo. 1986-125. Respondent *88 bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Respondent must prove fraud in each year for which she seeks to avoid the statute of limitations. The elements of fraud that respondent must prove under section 6501(c)(1) are the same elements essential for imposing a fraud penalty under section 6653(b). Estate of Temple v. Commissioner, 67 T.C. 143, 159-160 (1976); Mobley v. Commissioner, T.C. Memo. 1993-60. Those elements are: (1) underpayment of tax, and (2) intent "to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes." Parks v. Commissioner, 94 T.C. 654, 661 (1990). Petitioner concedes the correctness of respondent's deficiency determination; therefore, an underpayment of tax has been shown, and the first element is satisfied. To carry her burden under section 6501(c)(1), respondent must present clear and convincing evidence of intent to evade taxes. Since direct proof of intent is rarely available, fraudulent intent generally is proven by circumstantial evidence and the *89 reasonable inferences to be drawn from such evidence. Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980); Mobley v. Commissioner, supra.Intent is to be determined at the time the return is filed and not at some later date. Gleis v. Commissioner, 24 T.C. 941, 952-953 (1955), affd. 245 F.2d 237 (6th Cir. 1957). The most probative evidence of fraudulent intent that respondent has presented is the four-count conviction under section 7201 (one count for each of the tax years here at issue) of Angelo Carsendino. We have relied heavily upon section 7201 convictions, as well as convictions under other similar provisions, as proof of intent to evade taxes. See Mobley v. Commissioner, supra (conviction of conspiracy to defraud the Government "creates a powerful inference" of intent); Bell v. Commissioner, T.C. Memo. 1987-501 (conviction under section 7201 is "clear and convincing evidence of * * * fraudulent intent for that year."). A conviction of one spouse under section 7201 does not estop the *90 other spouse from presenting evidence of the lack of fraudulent intent in the filing of a joint return. Moore v. United States, 360 F.2d 353, 357-358 (4th Cir. 1965); cf. Randolph v. Commissioner, 74 T.C. 284, 287-288 (1980) (wife not collaterally estopped from contesting respondent's determination because she was not party in earlier redetermination involving husband). In this case, however, petitioner has presented no evidence to contradict the reasonable inference to be drawn from the evidence presented by respondent. We find that (1) the conviction of Angelo under section 7201 for each of the 4 years at issue, (2) petitioner's concession with respect to the correctness of respondent's deficiency determination, and (3) the lack of any evidence presented by petitioner to contradict a finding of fraud, lead us to conclude that respondent has met her burden under section 6501(c)(1) for each of the 4 years at issue. Thus, the statute of limitations does not bar collection of tax for those years. Since we have found that respondent has carried her burden under section 6501(c), we need not address the applicability of *91 the second exception asserted by respondent. II. Innocent Spouse
A. In General
A husband and wife may make a joint return of income tax and, thereby, enjoy certain tax benefits. Sec. 6013(a). Each spouse, however, will be jointly and severally liable for taxes incurred. Sec. 6013(d)(3). The so-called innocent spouse rule permits a spouse to avoid joint and several liability in certain cases. Sec. 6013(e). [1] For petitioner to qualify as an innocent spouse, it must be established: (1) That a joint return was filed in each year, (2) that there is a substantial understatement of tax and that the understatement is attributable to grossly erroneous items of Angelo, (3) that, in signing the return, she did not know, and had no reason to know, that there was such substantial understatement, and (4) that taking into account all the facts and circumstance, it is inequitable to hold her liable for the deficiency. Sec. 6013(e)(1)(A)-(D). Respondent has conceded the first two elements of the test for all the years here at issue. Thus, petitioner must show that she did not know, and had no reason to know, of the substantial understatement of tax attributable to grossly erroneous *92 items of her husband, and that it would be inequitable to hold her liable. B. Questions of Fact -- Petitioner's Burden
Whether petitioner knew, or had reason to know, of the substantial understatements and whether it would be inequitable to hold her liable are questions of fact. Terzian v. Commissioner, 72 T.C. 1164, 1170-1172 (1979). Petitioner bears the burden of proof, Rule 142(a), which she must carry by a preponderance of the evidence, Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. T.C. Memo. 1988-63. C. Petitioner's Brief; Petitioner's Failure *93 To Carry Her Burden
As stated, we have found those facts that the parties have stipulated. Also, we have received into evidence those exhibits attached to the stipulation of facts, as well as other exhibits offered by respondent. A hearing in this case was held in New York City on June 29, 1993. Other than respondent's revenue agent, petitioner was the only witness. A transcript of 187 pages (the transcript) resulted from that hearing. At the close of that hearing, the parties were directed to file briefs with the Court. Rule 151 concerns itself with briefs. Paragraph (e) of that Rule addresses the form and content of briefs, and directs that all briefs shall contain certain information. Subparagraph (3) of paragraph (e) directs that all briefs shall, among other things, contain the following: Proposed findings of fact (in the opening brief or briefs), based on the evidence, in the form of numbered statements, each of which shall be complete and shall consist of a concise statement of essential fact and not a recital of testimony nor a discussion or argument relating to the evidence or the law. In each such numbered statement, there shall be inserted references to *94 the pages of the transcript or the exhibits or other sources relied upon to support the statement. * * *
Rule 151(e)(3). The brief filed by petitioner's counsel fails to comply with Rule 151. In particular, it fails to comply with paragraph (e)(3). Except in the grossest form, it does not relate the evidence before the Court to proposed findings of fact. It is claimed that petitioner's innocent spouse defense is supported by petitioner's testimony. There are, however, no supporting references to pages of the transcript. Petitioner's brief is of very little assistance to us in making findings of fact. In arriving at our findings of fact, we have considered petitioner's claims as to what she testified. We have also taken into account those facts that have been stipulated, and have accepted certain facts proposed by respondent. We have examined the exhibits in evidence and have found certain facts based on that examination. Petitioner has not carried her burden of proving her lack of knowledge as to substantial understatement of tax, and we have so found. Accordingly, petitioner is not an innocent spouse. Since petitioner has not met the requirement of section *95 6013(e)(1)(C), we need not determine whether it would be inequitable to hold her liable for the deficiencies in tax. See sec. 6013(e)(1)(D). Petitioner does not qualify for relief under section 6013(e), and we so hold. We set forth the reasoning behind our ultimate finding of fact in the next section of this report. D. Petitioner Has Not Demonstrated a Lack of Knowledge
In cases involving omissions of items from gross income, to meet the requirement of section 6013(e)(1)(C), a spouse must show a lack of actual knowledge of the understatement and that a reasonably prudent spouse, with the spouse's knowledge of the family's finances and of other pertinent facts and circumstances, would have no reason to know of the omission. Estate of Jackson v. Commissioner, 72 T.C. 356, 361 (1979). On brief, petitioner claims that, in signing the returns in question (1) she did not know and (2) given her knowledge of the family's finances, had no reason to know of any understatements of income. Petitioner claims that she testified to that effect. We will accept that she did so testify. On brief, however, petitioner also states that: "it was established *96 that * * * [her] husband was not only not forthright, but absolutely withheld important information from her, including the details of the tax returns." (Emphasis added.) That statement seems to contradict her claim that she had no reason to know of the understatements. To us, Angelo's absolute withholding of the details of the tax returns would indicate that petitioner should have been on notice that the returns she signed may have been incomplete. See Adams v. Commissioner, 60 T.C. 300, 303 (1973) ("wife's refusal to be forthright about the family income" put the husband on notice of the omission of items from income). Notwithstanding what may amount to a concession by petitioner that she was on notice that the returns in question may have been incomplete, we believe that petitioner did know (or, at the very least, should have known) that the returns she signed were incomplete. Petitioner was not a stranger to the financial affairs of her family. She testified that, from 1983 to 1986, Angelo turned his paycheck over to her and she paid the household bills. She deposited Angelo's paychecks into a joint bank account and wrote checks *97 thereon. For the years in issue, the following table compares (1) gross income reported by petitioner and Angelo (nearly all of it Angelo's), (2) deposits to joint banking accounts of petitioner and Angelo, and (3) amounts withdrawn from those accounts by petitioner. Gross Income
Deposits into
Amounts Withdrawn
Year
Reported
Joint Accounts
by Petitioner
1983
$ 27,154
$ 105,408
$ 81,897
1984
45,261
114,828
54,775
1985
51,531
111,203
79,966
1986
66,352
69,068
55,628
During each of those years, except 1986, the amount deposited into the joint accounts was at least double the amount of reported income. Because of the joint ownership of those accounts, we think it a fair inference that petitioner was aware of the amounts of those deposits. As we have said in a different context, a bank deposit is prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Petitioner has not shown any nontaxable sources for those deposits. Even if we were not to credit petitioner with knowledge of all of the deposits to those accounts, clearly she was aware of amounts she withdrew from those accounts, and other amounts *98 that were spent on her by Angelo or that she watched Angelo spend. Again, with regard to those other amounts, petitioner has shown no nontaxable sources. On a year-by-year basis those amounts were as follows: 1983
In 1983, the Carsendinos purchased a house for $ 189,000. In connection with that purchase, petitioner (who was present at the closing) wrote checks in amounts in excess of $ 40,000. Indeed, during 1983, petitioner drew checks from a joint checking account, including the checks for the home purchase, in amounts totaling $ 81,897. In 1983, petitioner also received an automobile from Angelo, for which he paid $ 18,000 in cash. The total of those expenditures is $ 99,897. The Carsendinos' reported gross income for that year, however, was only $ 27,154. 1984
In 1984, petitioner drew checks from two joint checking accounts in amounts totaling $ 54,775. In that year, Angelo traded in the car that was purchased in 1983 for two new cars, paying at least $ 5,299 in cash. Petitioner was given one of those cars to drive. The total of those expenditures is $ 60,074. The Carsendinos' reported gross income for that year was only $ 45,261. 1985
In 1985, petitioner *99 drew checks from two joint checking accounts in amounts totaling $ 79,966. The Carsendinos' reported gross income for that year was only $ 51,531. 1986
In 1986, petitioner drew checks from two joint checking accounts in amounts totaling $ 55,629. In February of 1986, petitioner was present at the closing of a real estate purchase made by Jade Corp., a corporation which was wholly owned by petitioner and Angelo at that time. At the closing, petitioner drew checks on Angelo's individual Chemical Bank account to cover certain fees related to the transaction. [2] In addition to the checks drawn by petitioner, a check for $ 125,000 was drawn on that individual account to pay for the purchase of the property. The Carsendinos' reported gross income for that year was only $ 66,352. In sum, there has been a considerable amount of evidence presented from which we can infer that petitioner *100 had substantial knowledge of the family finances and expenditures. Indeed, for each year in question, petitioner directly expended, or directly expended and participated in expending, more income than was reported. We believe that we have adequate support for our finding that, for each of the years here at issue, petitioner knew, or had reason to know, of the substantial understatement of income attributable to grossly erroneous items of her husband. III. Additions to Tax
The final issue for decision is whether petitioner is liable for additions to tax under section 6661. Respondent determined that petitioner has substantially understated her income tax liability for the years 1983 through 1986. The amount of an addition to tax for a substantial understatement of income tax for a taxable year is equal to 25 percent of the amount of any underpayment attributable to such substantial understatement. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498, 500-503 (1988). For the years at issue, a substantial understatement is an understatement that exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable *101 year or $ 5,000. Sec. 6661(b)(1)(A). Petitioner's understatements in each year are substantial. A taxpayer generally is liable for a section 6661 addition determined by respondent. Two exceptions exist. The first occurs when the taxpayer can demonstrate that the understatement must be reduced because substantial authority supported the position taken by the taxpayer or she adequately disclosed in her return or attachment thereto the relevant facts of that position. Sec. 6661(b)(1)(B). The second exception is when the taxpayer has made a showing that there is reasonable cause for the understatement and that she has acted in good faith. Such a showing would permit the Secretary to waive the addition. Sec. 6661(c). Petitioner has not shown that her position was supported by substantial authority or that it was based upon facts that were adequately disclosed when she filed the returns, and she has not made a showing that the Secretary committed an abuse of discretion by not waiving the addition. Rule 142(a). Therefore, respondent's determination shall be upheld. Decision will *102 be entered for respondent. Footnotes
1. The following abbreviations will be used for the financial institutions: NNB -- Nanuet National Bank; GB -- Goldome Bank;ML -- Merrill Lynch.↩
2. One of the two certificates of deposit purchased in 1984 was purchased with funds from joint checking account #437-3621264. That transfer of funds from one account to another is reflected in the deposits total for 1984 ($ 124,828 - $ 10,000 - $ 114,828).↩
1. Sec. 6013(e) was amended by the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 424, 98 Stat. 494, 801. That amendment applied retroactively to all taxable years to which the Internal Revenue Code of 1954 applies. DEFRA, sec. 424, 98 Stat. 803. Thus, the amended version of sec. 6013(e)↩ applies to all the tax years at issue in this case.
2. As early as October 1985, petitioner had become aware that Angelo maintained an individual checking account at Chemical Bank.↩